# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>WILLIAM D. DICKERSON,  )<br>  )<br>Defendant.  ) | Case Nos. 2:04-cr-20055<br>(Urbana Division)<br>&<br>1:09-cr-10096<br>(Peoria Division) |

## ORDER & OPINION

This matter is before the Court on Defendant William D. Dickerson's *pro se* request for compassionate release (Case No. 04-20055, dkt. 107; Case No. 09-10096, dkt. 50) and counseled Amended Motion for Compassionate Release (Case No. 04-20055, dkt. 110; Case No. 09-10096, dkt. 56). The Government has responded (Case No. 04-20055, dkt. 114; Case No. 09-10096, dkt. 54) and Probation has filed a recommendation (Case No. 04-20055, dkts. 109, 113; Case No. 09-10096, dkts. 52, 53) at the Court's direction. Defendant also sent a "Reply" and letter to the Court. (Case No. 04-20055, dkts. 116, 117; Case No. 09-10096, dkts. 59, 60).[1] This matter is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In April 2005, Defendant was sentenced to 240 months' imprisonment after pleading guilty to conspiracy to distribute more than 5 kilograms of cocaine and more

---

[1] The compassionate release filings and documentation in these cases are duplicative; all further citations are to the documents filed in Case No. 04-20055 unless otherwise specified.

than 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Dkt. 20). While serving his 240-month sentence at FCI Pekin, Defendant assaulted a correctional officer. (Case No. 09-10096, dkts. 35, 38). Defendant took his case to trial, where he was convicted by a jury. (Case No. 09-10096, Dkt. 38). The Court imposed a sentence of 70 months and ordered that the first 46 months of the sentence run concurrent with his 240-month sentence, such that only 24 months would run consecutive to his original sentence for a total term of 264 months. (Case No. 09-10096, Dkt. 38 at 2). The Court also imposed 3 years of supervised release, to run concurrent to the 10 years of supervised release imposed in Case No. 04-20055. (Case No. 09, 10096, Dkt. 38 at 3; Case No. 04-20055, Dkt. 20). Defendant is currently projected to be released on January 8, 2025. (Dkt. 109 at 1).

The instant motion arises from the ongoing COVID-19 pandemic. Defendant is incarcerated at United States Penitentiary (USP) Yazoo City, where there are currently 112 active COVID-19 cases among the inmate population, 7 active cases among staff, and 1 reported inmate death; 127 inmates and 12 staff members were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 18, 2021).[2] The COVID-19 vaccine

---

[2] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 18, 2021) (emphasis in original). The website further indicates there have been

has not yet been administered at USP Yazoo City. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 18, 2021).[3]

Defendant, 42, alleges his weight, age, and diagnosis of latent tuberculosis, when coupled with the threat of COVID-19, constitute an extraordinary and compelling reason warranting compassionate release; he also argues he likely would have received a lower sentence if he were sentenced today. (Dkt. 110 at 1). If released, Defendant proposes residing with his sister, a placement Probation advises appears to be suitable, with the caveat that it would ultimately be up to the U.S. Probation Office in the Central District of California to decide whether the residence is acceptable and whether to accept supervision of the case. (Dkt. 113 at 2).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United*

---

1,029 COVID-19 tests conducted at USP Yazoo City, 25 are pending, and there has been a total of 270 positive tests. *Id.*

[3] The BOP website contains the following information about vaccine data:
> The information in this area of the resource page is updated each weekday at 3:00pm EDT. It's compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. The locations in the table below have received allocations of the vaccine. The numbers in the table only reflect staff and inmates that have completed both doses (fully inoculated). Staff who received their vaccination in the community rather than a BOP facility, are not reflected in the numbers below.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 18, 2021).

*States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, ___ F. 3d ___, No. 20-2404, 2021 WL 486885, at *2 (7th Cir. Feb. 10, 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, ___ F. 3d ___, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is outdated and not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific

circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

First, the Government concedes Defendant has satisfied the administrative exhaustion requirement. (*See* dkt. 114 at 12). Defendant's *pro se* request shows he requested compassionate release from the warden on June 3, 2020, citing the risk of COVID-19 coupled with his underlying condition and changes to the applicable statutory sentencing scheme (dkt. 107-2 at 1), then waited far more than 30 days before filing a request for compassionate release in this Court on January 4, 2021 (dkt. 107). He has therefore satisfied the exhaustion requirement and is statutorily eligible for compassionate release.

5

Defendant argues his age, weight, and latent tuberculosis, when coupled with the threat of contracting COVID-19 at USP Yazoo City,[4] constitute extraordinary and compelling reasons warranting release. (Dkt. 110 at 1). The Court has consistently accepted the proposition that extraordinary and compelling reasons exist where a prisoner suffers from a chronic condition from which he or she is not expected to recover and which places the prisoner at a heightened risk for severe illness or death from COVID-19, *see United States v. Hamilton*, No. 4:08-cr-40006, Dkt. 160 at 4 (C.D. Ill. Sept. 1, 2020); U.S.S.G. § 1B1.13 cmt. n.1(A).

Defendant is 47 years old and overweight. Although Defendant argues these "risk factors" place him at a heightened risk of complications from COVID-19 (dkt. 110 at 14), they do not rise to the level of extraordinary and compelling. According to the CDC, "[t]he risk for severe illness with COVID-19 increases with age," such that "people in their 50s are at higher risk for severe illness than people in their 40s," and so on, with the greatest risk in adults aged 85 or older. *Older Adults*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Feb. 19, 2021). Defendant's age of 47 does not place him among the highest risk age groups, and the fact that Defendant may be at higher risk than he would be if he were in his 30s is simply not an "extraordinary" circumstance warranting release. Similarly, Defendant is only marginally overweight, with a

---

[4] Defendant describes spending "approximately 20 hours per day in communal spaces in which [inmates] are placed in close contact with other" and encountering staff who frequently rotate both inside and outside the complex, making it impossible for him to self-isolate to avoid infection. (Dkt. 107 at 11).

6

recorded BMI of 25.3 (as of October 18, 2020) and self-reported BMI of 25.8. (*See* dkt. 114 at 8; dkt. 110 at 5). The CDC recognizes obesity (BMI $\geq$ 30) as an underlying condition that increases the risk of severe illness from COVID-19; being overweight (BMI > 25) is a condition that "might" increase the risk. *See People with Certain Medical Conditions*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021). Defendant is not obese, and he is just 0.3 kg/m$^2$ (or 0.8 kg/m$^2$ according to his self-report) above the threshold for being overweight. As of 2018, more than 70% of American adults aged 20 and over were overweight. *Obesity and Overweight*, Ctrs. For Disease Control, https://www.cdc.gov/nchs/fastats/obesity-overweight.htm (last visited Feb. 19, 2021). This is not an extraordinary and compelling reason for relief.

Defendant's only remaining alleged underlying condition is latent tuberculosis. Neither latent tuberculosis nor active tuberculosis is recognized by the CDC as a condition that increases the risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021). Defendant argues "[t]he medical community's understanding of the interaction of latent TB and COVID-19 is still evolving" (dkt. 107 at 5), and one March 2020 study, yet to be peer-reviewed, suggested that "individuals with latent or active TB may be more susceptible to SARS-COV-2 infection, and that COVID-19 disease progression may be more rapid

7

and severe"⁵ (dkt. 110 at 3). Still, the British Columbia Centre for Disease Control states "there is no evidence to suggest that latent TB infection (LTBI) alone puts you at higher risk of getting COVID-19. If you are generally in good health, it is unlikely that LTBI influences the symptoms associated with COVID-19." *Tuberculosis and COVID-19*, BC Ctr. for Disease Control, http://www.bccdc.ca/health-info/diseases-conditions/covid-19/priority-populations/tuberculosis-and-covid-19 (last visited Feb. 19, 2021).

Some courts have granted compassionate release to defendants diagnosed with latent tuberculosis, especially where "there were other critical circumstances. . . including the presence of another, more critical underlying condition that increased the inmate's COVID-19 risk, advanced age, and/or an upcoming release date." *United States v. Rodriguez*, 468 F. Supp. 3d 681, 685 (E.D. Pa. 2020); *see, e.g., United States v. Atwi*, 455 F. Supp. 3d 426 (E.D. Mich. 2020) (granting compassionate release to a defendant with three months remaining on four-month sentence who was diagnosed with latent tuberculosis but not yet treated); *United States v. Starling*, No. 16-cr-20039, Dkt. 52 (S.D. Fla. Jan. 12, 2021) (granting compassionate release to defendant with obesity and latent tuberculosis); *United States v. Greene*, No. 15-cr-20709, 2020 WL 4581712 (E.D. Mich. Aug. 10, 2020) (finding latent tuberculosis to be an

---

5 Yu Chen, MD; Yaguo Wang, PhD; Joy Fleming, PhD; Yanhong Yu, MD; Ye Gu, MD; Chang Liu, MD; Lichao Fan, MD; Xiaodan Wang, BSN; Moxin Cheng, MD; Lijun Bi, PhD; Yongyu Liu, MD, *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity* (Mar. 16, 2020), available at: https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1 (last accessed Feb. 19, 2021).

extraordinary and compelling circumstance and granting compassionate release). Others have found latent tuberculosis does not constitute an extraordinary and compelling reason for release. *See, e.g., Rodriguez*, 468 F. Supp. 3d at 685–686 (finding defendant failed to establish that his latent tuberculosis increased his COVID-19 risk where his condition was asymptomatic, and he had completed treatment); *United States v. Spikes*, No. 08-cr-201-2, 2020 WL 6044614, at *5 (E.D. Pa. Oct. 13, 2020) (finding defendant's controlled latent tuberculosis was not an extraordinary and compelling reason for release where defendant was 48 years old with no other pre-existing conditions, and there was no evidence he was suffering from respiratory complications); *United States v. Clausen*, No. 00-cr-291-2, 2020 WL 4260795, at *6 (E.D. Pa. July 24, 2020) ("Without more, [defendant's] latent tuberculosis does not establish an extraordinary and compelling reason warranting his immediate release.").

In this case, Defendant's medical records indicate he completed preventative treatment, and his condition remains controlled and asymptomatic. (*See* Dkt. 115-1 at 16; Dkt. 115-2 at 9). On this record, and absent more conclusive evidence that latent tuberculosis increases the risks from COVID-19, the Court finds in its discretion Defendant has not demonstrated his latent tuberculosis constitutes an extraordinary and compelling reason warranting release.

Finally, Defendant also argues the disparity between the sentence he received and the one he would receive under today's statutory sentencing scheme constitutes an extraordinary and compelling reason for sentence reduction under the

9

compassionate release statute. (*See* dkt. 110 at 25–29). Accounting for the reduced mandatory minimum under the Fair Sentencing Act, *see* 21 U.S.C. § 841(b)(1)(A), and removing one of Defendant's prior convictions as a predicate for enhancement,[6] Defendant would face a 120-month (10-year) mandatory minimum sentence for the offenses in Case No. 04-20055 today, compared to the 240-month (20-year) mandatory minimum imposed at the time of sentencing. (Dkt. 110 at 28). Defendant also would have a reduced guideline range of 210–262 months' imprisonment today, compared to the 262–327 month range he faced at sentencing. (Dkt. 110 at 28).

Although this Court has held a sentencing disparity can constitute a cognizable basis for compassionate release, relief based on such a disparity is reserved for "the most extreme of cases." *See United States v. Haynes*, No. 96-cr-40034, Dkt. 170 at 14 (C.D. Ill. Feb. 4, 2021). Defendant's argument is a non-starter under this standard; the disparity in his case to which he refers is simply not the type this Court would characterize as extraordinary and compelling. Indeed, the 240-month sentence Defendant received remains squarely within the updated guideline range of 210–262 months he claims ought to apply. Nevertheless, Defendant argues if he received the low end of today's guideline range, his sentence in Case No. 04-20055 could be 210

---

[6] One of Defendant's prior convictions was in Illinois case 96-CF-314 for possession of less than 15 grams of cocaine. (Dkt. 17 at 18–19). The Seventh Circuit has held that a conviction under 720 ILCS 570/401(c)(2), which defines cocaine more broadly than the Controlled Substances Act, "is not a predicate felony drug offense that triggers 21 U.S.C. § 841(b)(1)(C)'s sentencing enhancement." *United States v. Ruth*, 966 F.3d 642, 650 (7th Cir. 2020). Defendant therefore argues this conviction should not have counted as a predicate felony that enhanced his statutory mandatory minimum. (Dkt. 110 at 28).

months—30 months (2.5 years) lower than the one he is currently serving. (Dkt. 110 at 29). The Court is mindful that no amount of time is insignificant for defendants serving sentences of imprisonment, but compassionate release is not a sentencing "do-over," and the Court finds this possible difference does not rise to the level of an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). It is also worth noting that this Court exercised its discretion in sentencing Defendant to a below-guideline and partially-concurrent sentence in Case No. 09-10096, such that Defendant's total sentence of imprisonment for his combined offenses is 264 months. (*See* Case No. 09-10096, Dkts. 36 at 1, 38 at 2). Even within today's updated guidelines, Defendant could have received a sentence of nearly that length in Case No. 04-20055 alone.

On holistic review of Defendant's reasons for compassionate release, the Court finds, in its discretion, they do not rise to the level of extraordinary and compelling.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's requests for compassionate release (Case No. 04-20055, dkts. 107, 110; Case No. 09-10096, dkts. 50, 56) are DENIED.

SO ORDERED.

Entered this 22nd day of February 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
